B. M. C. Manufacturing Corporation v. Commissioner.
B. M. C. Mfg. Corp. v. Commissioner
Docket No. 31588.
United States Tax Court
1952 Tax Ct. Memo LEXIS 255; 11 T.C.M. (CCH) 376; T.C.M. (RIA) 52106; April 16, 1952
*255 Lloyd C. Anderson, Esq., 97-99 Box 590, Binghamton, N. Y., for the petitioner. Clay C. Holmes, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent determined a deficiency of $7,155.27 in petitioner's income tax for 1947. The only adjustment to net income assailed by petitioner is respondent's disallowance of a claimed interest expense of $12,865.39. Some of the facts are stipulated. Findings of Fact The stipulated facts are hereby found. Petitioner, a corporation organized under the laws of the State of New York on October 13, 1944, has its principal office in Binghamton, New York. It filed a Federal income tax return for 1947 with the Collector for the twenty-first district of New York. During the year 1947 petitioner had authorized capital consisting of 2,500 shares of $100 par value preferred stock, and 2,500 shares of no par value common stock. The shares of stock originally issued on March 23, 1946, and held during 1947, were as follows: E. R. Botnick - 1 share preferred at $100.00 S. W. Botnick - 1 share preferred at $100.00, 100 shares common at $1.00 A. K. Botnick - 2,400 shares common at $1.00 A. H. Tarsches - 1 share preferred *256 at $100.00 Petitioner began business January 1, 1946. As of that date petitioner issued to Botnick Motor Corporation, a Chevrolet Agency which was engaged in defense production during World War II, instruments entitled "debenture notes" in the amount of $150,000, dated June 1, 1946. In exchange therefor petitioner obtained from Botnick machinery and equipment used during World War II to manufacture wrenches, pliers and similar metal products. The "debenture notes" read, in part, as follows: "B. C. M. Manufacturing Corp., a corporation organized and existing under and by the virtue of the laws of the State of New York and having its principal office and place of business at 36 Wall St., Binghamton, Broome County, New York, hereinafter called the 'Company,' for value received, hereby acknowledges that it is indebted to the bearer hereof under the conditions and subject to the limitations hereinafter expressed, in the sum of ONE THOUSAND DOLLARS ($1,000.) lawful money of the United States, which sum it hereby promises to pay to the holder hereof at the First National Bank of Binghamton, N. Y., Binghamton, N. Y. ten years after dute hereof with interest thereon at the rate of 6% per annum, *257 which interest shall be paid semi-annually on the first days of November and May in each year. "This note is one of a series of notes of the Company known as '6% Debenture Notes,' authorized by the stockholders and by the Board of Directors of the Company to an amount not exceeding in the aggregate the principal sum of $100,000.00. "The notes are issued under, subject and pursuant to the following terms and conditions: * * *
"3. Upon any default being made in the payment of any interest when due, the holder of any note or notes may demand payment of such interest so due and if same is not paid within 90 days after the time or date of such demand the holder of any such note, or notes, may bring action in any court of competent jurisdiction to enforce payment of said note, or notes, and the accrued interest thereon; but no action may be brought to recover on said note until after the expiration of said 90 days period; and then only subject to the provisions of Par. 5 hereof; provided, however: payment of interest may be enforced in such action, but no principal may be recovered except or until it is made to affirmatively appear in such action that all general creditors are paid, or that *258 the assets of the company are adequate, at the time of such determination, to pay all general creditors in full, as well as the note or notes on which recovery of principal, because of default of interest is sought. * * *
"5. In case the Company shall become insolvent and/or be liquidated before the maturity date for the payment of principal, all debentures notes shall immediately become due and payable and shall share pro rata in any recovery against the Company with the holders of other debenture notes in this and any subsequent issue; but no debenture note holder shall be entitled to proceed against the Company to enforce payment, nor to receive any payment of principal, until general creditors are fully paid." * * *
In its income tax return filed for 1947 petitioner listed the debentures, labelled as such, as part of its capital stock account. Petitioner maintained no capital account in its corporate books, but carried these securities in a separate account denominated "Debenture Notes." The shares of stock of Botnick Motor Corporation in 1947 and 1948 were held as follows: 1947
1948
A. K. Botnick
40
115
E. B. Tarsches
670
520
S. W. Botnick
40
115 During the months of August and October 1947, *259 an additional amount of the "debenture notes" was issued for cash as follows: S. W. Botnick
$60,000.00
E. R. Botnick
20,000.00
A. H. Tarsches
20,000.00
Total
$100,000.00
Petitioner paid $12,865.39 to the holders of the "debenture notes" during 1947 in these approximate amounts: Botnick Motor Corporation, $9,000; S. W. Botnick, $2,865.39; E. R. Botnick, $500, and A. H. Tarsches, $500. These payments were claimed as an interest expense on the return. The respondent disallowed the $12,865.39 deduction. On January 1, 1947 petitioner had earned surplus of $116,238.05; at the end of 1947 its earned surplus had increased to $121,480.46. E. R. Botnick, S. W. Botnick and E. B. Tarsches are brothers and sister, respectively. A. K. Botnick is S. W. Botnick's wife; E. B. Tarsches is the wife of A. H. Tarsches. Opinion The parties correctly agree that in determining whether the contested items are deductible as interest on indebtedness no single element is conclusive. Consideration of all relevant factors leaves us in no doubt that here the amounts are deductible. The sole considerations supporting respondent are that petitioner was at the outset thinly capitalized, cf. , and that *260 the principal of the debentures was subordinated to the claims of other creditors. As to the capitalization, respondent draws no distinction between petitioner's condition at the time of the issuance of the two sets of debentures. Looking at the facts as of the date of the second issue, the contention is clearly insupportable. By that time there was at the risk of the business and a part of petitioner's capital structure some $116,000 of accumulated earnings - more than the entire $100,000 of debentures issued at that time. See . Thin capitalization is some evidence that the relationship to the corporation is that of investor or stockholder rather than lender. See , affirmed (C.A. 3), . But there is no suggestion here that the relationship was different as to the two debenture issues. And the second is clearly invulnerable to the charge of thin capitalization. While the principal was subordinated to creditors, the interest was not. It was not only cumulative, but currently payable at all events and regardless of earnings and could be sued for, recovered on, and collected out of the corporation's *261 property in 90 days after default. Even the principal had a fixed due date "within the reasonably near future." Cf. ; see . To these two considerations, then, under the existing circumstances we attach a minimum of significance. On the other hand, there was no such discretionary or conditional payment as existed not only in , but in other cases where the interest was in fact held deductible like , affirmed (C.A. 6), ; and , affirmed No voting rights are assigned even conditionally to the debenture holders. The debentures are called such and the interest is so denominated. The indebtedness was not, as respondent erroneously contends, carried on petitioner's books as capital. And finally, and perhaps most significantly, the interest was not distributed to petitioner's stockholders in anything like the proportions in which they held its stock. In fact, the largest interest payment was made to a non-stockholder of petitioner, and petitioner's largest stockholder received but *262 less than $480 out of a total of $15,000 paid in interest. In our computations we have given the greatest possible scope to respondent's contention and assumed that the interest paid to Botnick Motor Corporation actually went to its stockholders proportionally. And even if we grant, without deciding whether this might be permissible, that for these purposes the stock of a husband is to be attributed to his wife and vice versa, the Tarsches family together owned but 3 1/2 per cent of petitioner's stock and received $8,500 in interest, while the S. W. Botnick family owned 92 per cent of petitioner's stock and received less than $4,000 of the interest. [1] To say under these circumstances that the interest was a substitute for dividends and represented a distribution of petitioner's earnings to its stockholders seems to us completely unwarranted. Decision will be entered for the petitioner. Footnotes
1. E. R.
S. W.
A. K.
A. H.
E. B.
Botnick
Botnick
Botnick
Tarsches
Tarsches
Capital contributed for stock in
petitioner
$100.00
$ 200.00
$2,400.00
$100.00
None
Interest Payments: Via Botnick Motor Corpo-
ration
479.97 Approximate figures.
*↩
479.97 *
$8,039.97 *
Directly
500.00
2,865.39
500.00
Total
$3,345.36